COPY

**PROSPER LAW CORPORATION**
Gordon F. Dickson, Esq. SBN 136857
Deborah P. Gutierrez, Esq. SBN 240383
Tanmay P. Mistry, Esq. SBN 251425
5301 Beethoven Street, Suite 109
Los Angeles, CA 90066
Telephone: (310) 893-6200
Facsimile: (310) 988-2930
E-mail: tmistry@prosperlawcorp.com

Attorneys for Plaintiffs,
Robert and Lynn Castro

FILED
CLERK, U.S. DISTRICT COURT
JUL 2 6 2011
CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**LACV11-6142**GHK(AJWx)

| | |
|---|---|
| ROBERT CASTRO, an individual, LYNN CASTRO, an individual, | Case No. |
| Plaintiffs, | **VERIFIED COMPLAINT FOR:** |
| vs. | 1. **DECLARATORY RELIEF**<br>2. **NEGLIGENCE**<br>3. **VIOLATION OF 15 U.S.C. §1641(g)**<br>4. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.**<br>5. **QUIET TITLE** |
| COUNTRYWIDE HOME LOANS, INC. D/B/A AMERICA'S WHOLESALE LENDER; BANK OF AMERICA CORPORATION D/B/A BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP; FEDERAL NATIONAL MORTGAGE ASSOCIATION; and Does 1 – 100, inclusive, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

VERIFIED COMPLAINT                                                                -1-

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................3

II.   DEFENDANTS AND VENUE.................................................................5

III.  THE CASTRO LOAN TRANSACTION AND DEFENDANTS' IMPROPER ATTEMPTS TO COLLECT PLAINTIFFS' MORTGAGE PAYMENTS........................................7

    A.    The Documents Purporting to be a "Notice of Default" and "Notice of Trustee's Sale" are Void Because No Breach of the Obligation Occurred.................................................................9

    B.    T. Sevillano is Not the "Assistant Secretary" of Countrywide and Lacked the Corporate and Legal Authority to Execute the Purported Assignment of Deed of Trust...........................................12

    C.    Defendants Failed to Record a *Duly Acknowledged* Assignment of Deed of Trust Before Exercising the Power of Sale, as Required by California Foreclosure Statutes........................................14

IV.  PLAINTIFFS' OFFERS TO TENDER.....................................................15

V.   THE DEFECTIVE SECURITIZATION OF PLAINTIFFS' NOTE AND MORTGAGE..............16

VI.  FANNIE MAE NEVER HAD, NOR HAVE THEY EVER HAD THE RIGHT TO ENFORCE PLAINTIFFS' OBLIGATION AND COLLECT THEIR MORTGAGE PAYMENTS.................18

VII. THE FAILURE TO ENJOIN THE ILLEGAL ENFORCEMENT OF THE OBLIGATION AND FRAUDULENT FORECLOSURE WILL RESULT IN PLAINTIFFS SUFFERING SUBSTANTIAL AND INCURABLE PREJUDICE........................................20

VIII. PLAINTIFFS HAVE SUFFERED, AND CONTINUE TO SUFFER, SIGNIFICANT, MONETARY, LEGAL, AND EQUITABLE DAMAGES.....................................22

IX.  FIRST CAUSE OF ACTION - DECLARATORY RELIEF...................................24

X.   SECOND CAUSE OF ACTION -NEGLIGENCE.............................................25

XI.  THIRD CAUSE OF ACTION - VIOLATION OF 15 U.S.C. §1641(g)....................26

XII. FOURTH CAUSE OF ACTION -VIOLATION OF CA. BUS. & PROF. CODE § 17200......29

XIII. FIFTH CAUSE OF ACTION - QUIET TITLE............................................31

1

**COMPLAINT**

2   COMES NOW Plaintiffs Robert and Lynn Castro ("Plaintiffs" or "Mr. and Mrs.

3   Castro"), by and through their counsel, for their Complaint against Defendants,

4   Countrywide Home Loans, Inc. D/B/A America's Wholesale Lender (in its capacity as

5   originating lender) (hereinafter "Countrywide"); Bank of America Corporation D/B/A

6   BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP (in its

7   capacity as purported beneficiary and purported servicing company) (hereinafter

8   "BAC"); and Federal National Mortgage Association (in its capacity as competing

9   interest) (hereinafter "Fannie Mae") (collectively "Defendants"), pleads as follows:

10   **I.   INTRODUCTION**

11   1.   Plaintiffs bring this action against Defendants for damages and harm

12   resulting from the Defendants' negligent, fraudulent, and unlawful conduct concerning a

13   residential mortgage loan and foreclosure proceedings on their property.

14   2.   Plaintiffs' information and belief is based on (1) a title report and analysis

15   of the subject property's county records, direct written and oral communication with

16   Defendants; (2) their counsel's research, experience, and extensive review of

17   depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly

18   available securitization documents & practices; (3) a review of the purported

19   "Assignment of Deed of Trust" signed by T. Sevillano; and (4) an audit of Fannie Mae's

20   filings with the Securities and Exchange Commission ("SEC").

21   3.   The claims at issue in the instant Complaint stem from the attempted and

22   purported "securitization" and alleged sale, negotiation, and/or transfer of Plaintiffs'

23   Promissory Note on the secondary mortgage market.

24   4.   On or about March 22, 2006, Mr. and Mrs. Castro executed a Promissory

25   Note ("Note") and Deed of Trust ("DOT" or "Trust Deed") (collectively referred to

26   herein as "Note and Mortgage"), obtaining a loan on the subject property.

27   5.   On or about October 29, 2010, T. Sevillano, purportedly the Assistant

28   Secretary for Countrywide, intentionally misrepresented to Plaintiffs in writing that

1  BAC had acquired an interest in their Note and Mortgage and that Countrywide had

2  endorsed, transferred, and negotiated their Note to BAC.

3        6.    Mr. and Mrs. Castro unfortunately relied on Countrywide's

4  misrepresentation to their detriment, and were damaged (and continue to be damaged) in

5  an amount to be determined at trial.  Specifically, (1) title to Mr. and Mrs. Castro's

6  home has been clouded and rendered unmarketable; (2) Mr. and Mrs. Castro have

7  expended significant funds to cover the cost of attorneys' fees and related costs; and (3)

8  suffered damage to their credit.

9        7.    Plaintiffs allege and believe thereon that on or around the time of

10  origination of Mr. and Mrs. Castro's loan, Countrywide attempted to securitize and sell

11  their loan to another entity or entities.  **That entity was *not* Fannie Mae or BAC**.

12  Nevertheless, BAC, an entity that has no beneficial interest in Plaintiffs' loan, has been

13  collecting Plaintiffs' mortgage payments and has initiated foreclosure proceedings.

14        8.    Subject to apparent financial double jeopardy and having paid the wrong

15  party since October 29, 2010, Plaintiffs seeks Court intervention to determine who the

16  owner of their Note and Mortgage truly is.

17        9.    Recent legal proceedings initiated by the California Attorney General have

18  exposed BAC's and Fannie Mae's failure to comply with the procedural requirements to

19  preserve Plaintiffs' chain of title through the securitization and foreclosure processes.

20  Thus, the ownership of Plaintiffs' Mortgage is in question due to "innovations" and

21  "short-cuts" designed to speed up the mortgage securitization process.

22        10.    On or about October 29, 2010, BAC utilized a foreclosure services "price

23  list" to create a document purporting to be an "Assignment of Deed of Trust"

24  ("Assignment") in an attempt to cure the fatal break in Plaintiffs' chain of title, which

25  was created by the defective attempt to securitize Plaintiffs' Note and Mortgage. *See*

26  **Exhibit "A"** attached herein, "Pricing Rate Sheet," in which DOCx brazenly offers a la

27  carte services including "creating missing intervening assignments," "curing defective

28  assignments," and "creating note allonges."

11.     The failure to properly document, endorse, and transfer Plaintiffs' Note and Mortgage to the purported beneficiary (Fannie Mae and/or BAC) has also created the current situation where: 1) Mr. and Mrs. Castro are unable to determine whether they sent their monthly mortgage payments to the right party; 2) multiple banks may seek to enforce their debt obligation; and 3) any would-be buyer of Plaintiffs' home will find themselves in limbo, unable to know with any certainty whether they can safely buy Plaintiffs' home or get title insurance.

12.     The parties involved in the purported securitization and transfer of Plaintiffs' Note and Mortgage failed to strictly adhere to the Pooling and Servicing Agreement ("PSA"), which requires that Plaintiffs' Note and Mortgage be properly endorsed, transferred, accepted, and deposited with Fannie Mae (or its custodian) on or before the closing date indicated on the PSA.

13.     The PSA is the document that governs the Fannie Mae Trust (hereinafter referred to as "FM Trust") which allegedly owns Mr. and Mrs. Castro's Note and Mortgage.  Plaintiffs allege that their Note and Mortgage are *not* part of the FM Trust res (the contents of the FM Trust), such that the Trustee of the FM Trust (purportedly Fannie Mae) can claim or assert an interest in their loan on behalf of the FM Trust.

14.     In addition to seeking compensatory, consequential, punitive, and other damages, Plaintiffs seek declaratory relief as to whether the Deed of Trust (Mortgage) secures any obligation of Plaintiffs such that BAC and/or Fannie Mae can foreclose on their home, and an permanent injunction restraining, enjoining, and/or staying the non-judicial foreclosure of Plaintiffs' home, or in the alternative, a final judgment granting Plaintiffs quiet title in the subject property.

## II.     **DEFENDANTS AND VENUE**

15.     This court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1332, 1343, and 42 U.S.C. §1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.  This Court also has supplemental jurisdiction over the pendant state law claims

1   because they form a part of the same case or controversy under Article III of the United

2   States Constitution, pursuant to 28 U.S.C. §1367.

3        16.    The unlawful conduct, illegal practices, and acts complained of and alleged

4   in this Complaint were all committed in the Central District of California and the

5   involved real property located in the Central District of California.  Therefore, venue

6   properly lies in this District, pursuant to 12 U.S.C. §2614 and 28 U.S.C. §1391(b).

7        17.    Plaintiffs are now, and at all times mentioned herein, individuals residing in

8   the County of Los Angeles.  At all times relevant to this action, Plaintiffs have owned

9   real property commonly known as 27729 Sycamore Creek Drive, Santa Clarita,

10   California 91354 (the "Property"), further described as Assessor's Parcel Number

11   2824012021.

12   -  18.    At all relevant times, Countrywide Home Loans, Inc. Đ/B/A America's

13   Wholesale Lender  ("Countrywide"), a New York corporation, has transacted and

14   continues to transact business throughout the State of California, including in Los

15   Angeles County.

16        19.    At all relevant times, Bank of America Corporation D/B/A BAC Home

17   Loans Servicing, LP FKA Countrywide Home Loans Servicing LP ("BAC"), a National

18   Association with its principle place of business in North Carolina, has transacted and

19   continues to transact business throughout the State of California, including in Los

20   Angeles County.

21        20.    Federal National Mortgage Association ("Fannie Mae"), a Delaware

22   Corporation, has transacted and continues to transact business throughout the State of

23   California, including in Los Angeles County.

24        21.    Plaintiffs are ignorant of the true identity and capacity of defendants

25   designated as Does 1-100, but will amend the Complaint when their identities have been

26   ascertained according to proof at the time of trial.  Plaintiffs allege on information and

27   belief, however, that each and every Doe Defendant is in some manner responsible for

28   the acts, and conduct of the other defendants, and were, and are responsible for the

1  injuries, damages, and harm, incurred by Plaintiffs.  Plaintiffs further allege on

2  information and belief that each such designated defendant acted, and acts, as the

3  authorized agent, representative, and associate of the other defendants in doing the

4  things alleged herein.

5      22.    Whenever reference is made in this Complaint to any act of any

6  defendant(s), that allegation shall mean that each defendant acted individually and

7  jointly with the other defendants.

8      23.    Any allegation about acts of any corporate or other business defendant

9  means that the corporation or other business did the acts alleged through its officers,

10  directors, employees, agents and/or representatives while they were acting within the

11  actual or ostensible scope of their authority.

12      24.    At all relevant times, each defendant committed the acts, caused or directed

13  others to commit the acts, or permitted others to commit the acts alleged in this

14  Complaint.  Additionally, some or all of the defendants acted as the agent of the other

15  defendants, and all of the defendants acted within the scope of their agency if acting as

16  an agent of the other.

17      25.    At all relevant times, each defendant knew or realized that the other

18  defendants were engaging in or planned to engage in the violations of law alleged in this

19  Complaint.  Knowing or realizing that the other defendants were engaging in or

20  planning to engage in unlawful conduct, each defendant nevertheless facilitated the

21  commission of those unlawful acts.  Each defendant intended to and did encourage,

22  facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted

23  the other defendants in the unlawful conduct.

24  **III.   THE CASTRO LOAN TRANSACTION AND DEFENDANTS' IMPROPER**

25  **ATTEMPTS TO COLLECT PLAINTIFFS' MORTGAGE PAYMENTS**

26      26.    Plaintiffs hereby incorporate by reference each and every one of the

27  preceding paragraphs as if the same were fully set forth.

28

27.     On or about March 22, 2006, Mr. and Mrs. Castro executed a Promissory Note ("Note") and Deed of Trust ("DOT" or "Trust Deed") (collectively referred to herein as "Note and Mortgage"), obtaining a loan on the Subject Property.

28.     On November 4, 2010, Countrywide caused a document purporting to be an "Assignment of Deed of Trust" ("Assignment") to be recorded with the County of Los Angeles.  The "Assignment" alleged that for "value received" Countrywide granted, assigned, and transferred to BAC, all beneficial interest in the DOT, together with "the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust/Mortgage." The "Assignment" was purportedly signed by "T. Sevillano," as the "Assistant Secretary" of Countrywide.  Plaintiffs allege that no such transfer ever occurred, and that T. Sevillano is not the "Assistant Secretary" for Countrywide.

29.     On November 1, 2010, a document purporting to be a Notice of Default ("NOD") was recorded.  Where the NOD is supposed to state the current pecuniary beneficiary pursuant to Cal. Civil Code § 2924c, BAC is listed.  However, for the reasons stated, BAC was not the current pecuniary beneficiary at that time.

30.     The NOD was signed on October 29, 2010, by "Jonathan Jackson" on behalf of and ReconTrust Company, N.A. (hereinafter "Recontrust")  "as agent for the Beneficiary".  This person purportedly averred:

> "...the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby."

31.     The NOD signed on October 29, 2010, named BAC as the "beneficiary" even though BAC is not, and was never, the true pecuniary beneficiary of Plaintiffs' Note and Mortgage at the time the NOD was executed.

32.    On February 2, 2011, a document purporting to be a "Notice of Trustee's Sale" was recorded.  The NOTS was signed by Nallely Ochoa on behalf of Recontrust in her alleged capacity as "Authorized Signer".  The NOTS was executed in the following capacity:

> "RECONTRUST COMPANY, N.A.
> 1800 Tapo Canyon Rd., CA 6-914-01-94
> SIMI VALLEY, CA 93063
> Phone/Sale Information: (800) 281-8219
>
>
> By: _____
> Nallely Ochoa, Authorized Signer"

33.    Both the Assignment and NOD were signed on October 29, 2010.

**a.  The Documents Purporting to be a "Notice of Default" and "Notice of Trustee's Sale" are Void Because No Breach of the Obligation Occurred**

34.    For the reasons alleged herein, none of the entities that recorded the "Assignment", "NOD" or "NOTS" are the current pecuniary beneficiary, or authorized agent thereof.

35.    The validity of the NOD is predicated on a valid assignment of Plaintiffs' debt to the entity declaring a default.  However, for the reasons stated herein, the "Assignment" was not valid.  Therefore, the NOD is void *ab initio*.

36.    On information and belief, Plaintiffs allege that the NOD was forged, fabricated, or signed by persons working for entities that have no legal or corporate authority to execute said documents.

37.    On information and belief, at the time Fannie Mae, BAC and/or Recontrust served Plaintiffs with the purported NOD, neither Fannie Mae, BAC nor Recontrust were owed Plaintiffs' debt.

38.    Plaintiffs allege that, on information and belief, the FM Trust that purportedly owns Plaintiffs' Note and Mortgage has been dismantled due to the disbursement of credit enhancements to the certificateholders.

39.     Due to the facts stated herein, no "breach of the obligation" occurred, because the entity declaring a "default" is not owed the debt.

40.     Plaintiffs dispute the alleged debt and allege that they are not required to pay Defendants since no Defendant has legal or equitable rights to enforce the purported obligation.

41.     Plaintiffs further allege that any amount allegedly owed under the Note is subject to equitable offset by the damages owed to Plaintiffs from Defendants Countrywide, Fannie Mae, BAC and/or Recontrust.

42.     As a result, the demand for payment and non-judicial foreclosure proceedings initiated by Defendants Fannie Mae, BAC and/or Recontrust, without being the parties entitled to enforce the obligation, is void and in violation of statutes and therefore cannot be the basis of a statutory non-judicial foreclosure pursuant to Cal. Civ. Code § 2924, et seq.

43.     Plaintiffs allege that Recontrust is/was not the trustee of the current pecuniary beneficiary and that, in fact, the "current beneficiary" is *not* Countrywide or Fannie Mae.

44.     Neither Fannie Mae, BAC nor Recontrust are the current pecuniary beneficiary of the DOT, an agent of the current beneficiary of the DOT, a legally authorized trustee under either the DOT or the agent, an employee of any authorized trustee of the DOT, or any other person with a security interest in the Property.  Nor is there a security on any obligation in favor of the Fannie Mae or in favor of any defendant.  In fact, Recontrust has no legal relationship with any party to the DOT.

45.     Fannie Mae, BAC, Recontrust are fraudulently posing as parties with an enforceable debt obligation and are asking the Court, via the publically recorded foreclosure documents, to ignore their fraud and allow Defendants' unlawful conversion of Plaintiffs' title in the Property.

46.     Cal. Civ. Code § 47 protects as privileged only those communications made by authorized parties.  None of the named Defendants were, or are, authorized parties or

1    agents thereof under the Deed of Trust.  Accordingly Recontrust's recordation of such

2    instruments was not privileged under Cal. Civ. Code § 47 and rendered Plaintiffs' title to

3    the Property unmarketable.

4         47.    The recordation and service of such instruments was malicious in that said

5    Defendants knew that they had no right, title, or interest in Plaintiffs' Note and

6    Mortgage, but demanded mortgage payments and initiated foreclosure proceedings

7    nonetheless.  Although Defendants knew no "default" had occurred, Defendants

8    proceeded to record the NOD with the intent of inflicting severe emotional distress and

9    intending to prevent Plaintiffs from exercising their legal right to protect their home.

10        48.    Based upon information and belief, any trustee's sale will also be void

11   because it would take place without the current pecuniary beneficiary experiencing or

12   declaring a default to the legally authorized trustee under the Deed of Trust.  Based upon

13   information and belief, at no time did Recontrust or its agents know, in fact, who the

14   current pecuniary beneficiary of the Note and Mortgage actually was.

15        49.    Pursuant to Cal. Civ. Code § 2924(e), Plaintiffs have the right to rebut the

16   presumption that the beneficiary actually knew of all unpaid loan payments on the

17   obligation owed to the beneficiary and secured by the Deed of Trust or Mortgage subject

18   to the NOD.  Any obligation that may have existed was not an obligation that Fannie

19   Mae, BAC and/or Recontrust were entitled to enforce at the time they began collection

20   efforts against Plaintiffs via the recordation of the NOD.

21        50.    Plaintiffs further allege that the purported NOD does not state the correct

22   amount purportedly owed because, aside from the fact that Plaintiffs do not owe BAC

23   or Fannie Mae any money, it includes illegal fees that were improperly assessed, and

24   fails to account for offsetting damages.

25        51.    Plaintiffs believe that these illegal and unnecessary fees were assessed for

26   improper and/or excessive broker priced opinions, attorney/trustee's fees, and property

27   inspection fees.

28

52.     Alternatively, Plaintiffs allege that the NOD was false because it did not correctly state the correct amount allegedly owed for foreclosure purposes.  Said amount, if any, is unknown.

**b.     T. Sevillano is Not the "Assistant Secretary" of Countrywide and Lacks the Corporate and Legal Authority to Execute the Purported Assignment of Deed of Trust**

53.     On October 29, 2010, T. Sevillano purportedly executed a document purporting to be an Assignment of Deed of Trust ("Assignment").  This "Assignment" purported to "grant, assign and transfer" all beneficial interest under the Deed "for value received" to BAC.  The alleged Assignment was recorded on November 4, 2010.

54.     Plaintiffs allege that T. Sevillano is what has come to be known as a "robo-signer" – an individual who simply signs thousands of foreclosure documents without any legal or corporate authority whatsoever.[1]

55.     T. Sevillano is not an "Assistant Secretary" for Countrywide.

56.     In reality, T. Sevillano is an employee for Defendant Recontrust. *See* **Exhibit "B"**, which is Tina Sevillano's "LinkedIn" profile stating that she is an employee of "Recon Trust Co".

57.     T. Sevillano was never, in any manner whatsoever, an "Assistant Secretary" of Countrywide.  For that reason, T. Sevillano never had, nor has, any corporate or legal authority from Countrywide, or the lender's successors and assigns, to execute the purported "Assignment".

58.     The "Assignment" is a fraudulent lien claim, and the execution, filing, and recordation of the documents were done for the purpose of harming and misleading Plaintiffs.  Specifically, on or around October 29, 2010, Defendant BAC directed

---

[1] A recent "60-Minutes" television news segment reported on the epidemic of "phony" and "forged" foreclosure documents used to evict homeowners, including the various different and forged signatures of "Linda Green" added to thousands of foreclosure documents filed in foreclosure proceedings all over the country, available at http://www.youtube.com/watch?v=UdeFyPC5MNI.  Ms. Green was interviewed by "60-Minutes" and admitted that her signature was forged by many DocX employees who were paid only $10 an hour and required to forge 4,000 documents a day.

1  Recontrust to fabricate the "Assignment" so that BAC could demand and/or collect
2  Plaintiffs' mortgage payments, even though BAC was not owed Plaintiffs' debt.  This
3  "Assignment" was also created for the purpose of aiding and abetting the illegal
4  foreclosure of Plaintiffs' home, as well as facilitating the unlawful collection of
5  Plaintiffs' mortgage payments.

6       59.    On or around October 29, 2010, Fannie Mae, BAC and Recontrust engaged
7  in a scheme to cloak T. Sevillano with corporate and legal authority.  This was an
8  intentional act, done knowingly with the specific intent that the consequences of their
9  actions be brought to fruition, which they have as evidenced by the imminent
10  foreclosure proceedings.

11       60.    At all times, Recontrust and its agents knew that T. Sevillano was not the
12  Assistant Secretary of Countrywide, and that T. Sevillano had no legal or corporate
13  authority to execute the alleged "Assignment".

14       61.    On October 29, 2010, Defendants Fannie Mae, BAC, Recontrust and/or
15  their agents began to fraudulently foreclose on Plaintiffs' property by relying on
16  documents that they were aware were fraudulent and which failed to actually "assign"
17  Plaintiffs' Note and Mortgage to Defendant Fannie Mae.

18       62.    On October 29, 2010, T. Sevillano signed the "Assignment" fraudulently
19  because it was signed without the knowledge or authorization of the entity who actually
20  owned Plaintiffs Note and Mortgage.

21       63.    Plaintiffs' allegations regarding the fabricated "Assignment" are supported
22  by investigations and depositions conducted of "employees" of foreclosure service
23  related companies across the country.

24       64.    For the reasons stated, the "Assignment" is not prima facie evidence of any
25  purported "assignment", negotiation or transfer of Plaintiffs' Note to BAC, or any other
26  entity.[2]

27
28      [2] California law and longstanding custom does not allow, grant, or permit a purported nominee of a lender, or the lender's unknown purported "successors or assigns", the right to assign, sell, transfer, or negotiate the actual pecuniary beneficial interest in the Note to another, without following the laws prescribed in the California Commercial Code, which

VERIFIED COMPLAINT                                 -13-

c.   **Defendants Failed to Record a *Duly Acknowledged* Assignment of Deed of Trust Before Exercising the Power of Sale, as Required by California Foreclosure Statutes**

65.   The purported "Assignment" recorded with the Los Angeles County Recorder on or around November 4, 2010, is fraudulent, for the reasons stated herein.

66.   Cal. Civ. Code § 2932.5 requires that the beneficiary attempting to exercise the power of sale must do so pursuant to a "duly acknowledged and recorded assignment of deed of trust":

> "[w]here a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. **The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.**" (emphasis added).[3]

67.   Cal. Civ. Code § 2924f(c)(2) specifically provides that the requirement to file a duly acknowledged assignment of deed of trust applies to the power of sale contained in a deed of trust or mortgage:

> "Except as otherwise expressly set forth in this subdivision, **all other provisions of law relating to the exercise of a power of sale shall govern the exercise of a power of sale contained in a deed of trust or mortgage** described in paragraph (1)." (emphasis added).

68.   As of October 29, 2010, Countrywide was not the beneficiary of Plaintiffs' Note and Mortgage and BAC did not become the beneficiary of Plaintiffs' Note and Mortgage. As alleged *supra*, the "Assignment" is a fraudulent lien claim and is of no legal force or effect. Thus, no "duly acknowledged" Assignment of Deed of Trust was

---

is applicable to Mr. and Mrs. Castro's Promissory Note. *See In re Walker*, Case No. 10-21656 (Bankr. ED. Cal. May 2010).unknown purported "successors or assigns", the right to assign, sell, transfer, or negotiate the actual pecuniary beneficial interest in the Note to another, without following the laws prescribed in the California Commercial Code, which is applicable to Mr. and Mrs. Castro's Promissory Note. *See In re Walker*, Case No. 10-21656 (Bankr. ED. Cal. May 2010).

[3] *See In re Salazar*, No. 10-17456-MM13, ___B.R.___, 2011 WL 1398478, at *7 (Bkr. S.D.Cal. 2011) ("Civil Code section 2923.5 requires that…the foreclosing beneficiary appear before the sale in the public title for the Property").

VERIFIED COMPLAINT                                                                                    -14-

1   recorded by the entity attempting to authorize the exercise the power of sale with the

2   County of Los Angeles, as required by Cal. Civ. Code §§ 2924f(c)(2) and 2932.5.[4]

3          69.      Furthermore, no "duly acknowledged" Assignment of Deed of Trust was

4   ever recorded by Fannie Mae. Thus, Fannie Mae is also not authorized to exercise the

5   power of sale.

6   **IV.**    <u>**PLAINTIFFS' OFFERS TO TENDER**</u>

7          70.      Plaintiffs initiated loan modification negotiation efforts with BAC on

8   September 20, 2010, after experiencing unforeseen financial hardship. Plaintiffs

9   believed their lender would be willing to avoid a foreclosure since they was willing to

10   tender unconditionally but needed the monthly payments restructured to reflect the

11   downturn in their monthly gross income. At the time, Plaintiffs relied on the

12   representations made by Defendants that the lender was their true creditor with the

13   power to collect payment and modify their loan. After months of negotiation, follow up

14   phone calls, and resubmitting documents many times over, Mr. and Mrs. Castro were

15   denied a loan modification on February 21, 2011. Thus, although they made every

16   effort to tender their debt obligation, Mr. and Mrs. Castro were denied the opportunity.

17   Since then, Plaintiffs have learned that none of the Defendants have any legal or

18   corporate authority to collect on their loan, service the loan, or proceed with a lawful

19   foreclosure.

20          71.      In an effort to verify and validate their debt, Mr. and Mrs. Castro sent a

21   Qualified Written Request letter pursuant to Real Estate Settlement Procedures Act, 12

22   U.S.C. 2605(e), dated July 11, 2011, in which they requested that the servicer provide,

23   among other things, "the name, address, name of a contact person and telephone number

24

---

25      [4] *See In re Salazar*, No. 10-17456-MM13, __ B.R. __, 2011 WL 1398478, at *8 (Bkr. S.D.Cal. 2011) (finding that

26   the holding in *Stockwell v. Barnum*, 7 Cal.App. 413, 416 (2d Distr. 1908) and its progeny which applied § 2932.5 only to mortgages, not deeds of trust, "has been determined to be obsolete," and that the "outdated distinction is especially moribund in the context of borrower's rights in the nonjudicial foreclosure context.") *In Re Salazar* also makes clear that §

27   2932.5 applies even when MERS has been designated as beneficiary under the Deed of Trust, "[t]he Court's analysis leads it to conclude that Civil Code Section 2923.5 requires [the foreclosing beneficiary]'s assigned beneficial interest be

28   recorded despite MER's initial role under the DOT, and that the statutory foreclosure scheme trumps MERS' proposed alternative system." *Id.* at 7.

---

1   of the current holder in due course and owner of the mortgage note." *See* **Exhibit "C"**

2   attached herein, Plaintiffs' Qualified Written Request.  12 U.S.C. 2605(e) requires that

3   the servicer provide this information and respond to a written request within 20 days of

4   receipt.  As of July 22, 2011, Countrywide has not responded as required by 12 U.S.C.

5   2605(e).

6

7   **V.   THE DEFECTIVE SECURITIZATION OF PLAINTIFFS' NOTE AND**
       **MORTGAGE**

8

9   72.   Securitization is the process whereby mortgage loans are turned into

10  securities or bonds and sold to investors by Wall Street and other firms.  More

11  specifically, under the standard model, the promissory notes were supposed to be sold

12  into a trust pool that holds the promissory notes as collateral on the securities bought by

13  investors.  These "true sales" allow the original lenders to move the notes off their

14  books, eliminating the need to maintain capital-adequacy reserves against default.  The

15  purpose of securitizing debt obligations is to provide a large supply of money to lenders

16  for originating loans, and to provide investment to bond holders – which are expected to

17  be relatively safe.

18  73.   These securitized trusts are governed by the common law trust rules of

19  Delaware or New York, depending on its origin, the prospectus filed with the Securities

20  and Exchange Commission and distributed to investors, and Internal Revenue Code §

21  860A through 860G, better known as the Real Estate Mortgage Investment Conduit

22  ("REMIC") rules.  The servicing of the pool of trusts is governed by various documents,

23  including the PSA and a 424B5 Prospectus.

24  74.   An essential aspect of the mortgage securitization process is that the issuing

25  trust for each Mortgage Backed Security (or "MBS") offering must obtain good title to

26  the mortgage loans comprising the pool for that offering.  This is necessary in order for

27  the mortgage-backed securities holders to be legally entitled to enforce the mortgage

28  loans in case of default.  Two documents relating to each mortgage loan must be validly

VERIFIED COMPLAINT                                                                    -16-

transferred to the trust as part of the securitization process – the promissory note and security instrument (deed of trust or mortgage).

75.     Plaintiffs allege that the "true sales" that were supposed to happen in the chain from the Warehouse Lender, Sponsor, and Depositor, failed to follow the basic legal requirements for the transfer of a negotiable instrument and thereby, the legal, equitable, and pecuniary interest in Mr. and Mrs. Castro's Note and Mortgage.

76.     After closing and recording the loan transactions, Mr. and Mrs. Castro's Note and Mortgage were not negotiated, endorsed, or transferred from Countrywide up the chain of securitization to Fannie Mae, and certainly not within the required number of days of the FM Trust's purported formation (which is required by the Pooling and Servicing Agreement and 424B5 Prospectus to maintain a valid chain of title).  This resulted in the stripping and voiding of the security interest in Mr. and Mrs. Castro's Note and Mortgage as no interest therein was ever transferred to the FM Trust. Therefore, Fannie Mae, the purported Trustee, cannot demand mortgage payments or foreclose.[5]

77.     Plaintiffs allege that their Note and Mortgage were not properly securitized and that the FM Trust has no legal, equitable, or monetary interest in their Promissory Note such that Fannie Mae can demand payments from Plaintiffs and threaten him with foreclosure.

78.     On information and belief, the FM Trust is a REMIC and subject to strict SEC and IRC regulations.  The FM Trust is regulated by New York Trust Law, specifically §7-2.01(c).

---

[5] Plaintiffs' allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in *Deutsche vs. Ibanez*, SJC-10694, 2011 WL 38071.  In *Ibanez*, the Court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by the Plaintiffs failed to demonstrate that they were the holders of the mortgages.  The Court rejected the banks' argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the mortgage.

79.    After reviewing Mr. and Mrs. Castro's chain of title, including the "Assignment" to BAC recorded on November 4, 2010, and Fannie Mae's own "Loan Lookup" on their website, Plaintiffs determined that their Note and Mortgage were not properly conveyed into the FM Trust (if it was ever properly formed) because: (1) the beneficial interest in Plaintiffs' Note and Mortgage were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey Plaintiffs' Note and Mortgage to the FM Trust) prior to the closing date of the FM Trust, as evidenced by the Assignment from Countrywide to BAC on November 4, 2010; and (2) Fannie Mae failed to perfect the title to Mr. and Mrs. Castro's Note and Mortgage by not following the requirements of the PSA and other agreements that govern the administration of the FM Trust.

80.    Fannie Mae cannot take any action which violates the terms of the FM Trust or New York Trust Law § 7-2.01(c).  As the purported Trustee of the FM Trust, Fannie Mae cannot take action which is not authorized by the agreements that created and govern the FM Trust.

81.    As a result of Fannie Mae's failure to make Plaintiffs' Note and Mortgage part of the FM Trust res, Fannie Mae, as purported Trustee, cannot lay claim to the Note, Mortgage or Mr. and Mrs. Castro's home such that Fannie Mae can collect mortgage payments or foreclose.

**VI.   NEITHER BAC NOR FANNIE MAE HAVE, NOR HAVE THEY EVER HAD, THE RIGHT TO ENFORCE PLAINTIFFS' OBLIGATION AND COLLECT PLAINTIFFS' MORTGAGE PAYMENTS**

82.    Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

83.    On or about March 22, 2006, Mr. and Mrs. Castro executed a Promissory Note (the "Note") and Deed of Trust, obtaining a loan on the Subject Property; Countrywide was named the lender, Recontrust was named trustee.

84.   As alleged herein, Plaintiffs' Note was not properly negotiated, endorsed, and transferred to Fannie Mae.  Attempting to "assign" or transfer a Deed of Trust by itself, as the Defendants did here, does not allow enforcement of Plaintiffs' Note.[6]

85.   California Commercial Code § 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418.  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

86.   On information and belief, neither Fannie Mae, BAC nor Recontrust were/are the current legal, equitable, or pecuniary beneficiary of Plaintiffs' Note and Deed of Trust.

87.   On information and belief, none of the Defendants were/are present holders in due course of Plaintiffs' Note such that they can enforce Plaintiffs' obligation, demand mortgage payments, or foreclose.

88.   On information and belief, Fannie Mae, BAC or Recontrust were/are not the nonholders in possession of Plaintiffs' Note who have rights of the holder.

89.   If there is a holder in due course of Plaintiffs' Note at issue, pursuant to California Commercial Code § 3301, et seq. and/or the PSA, it is the entity that can

---

[6] According to long standing California law, the assignment of a mortgage without a transfer of the indebtedness confers no right, since debt and security are inseparable and the mortgage alone is not a subject of transfer.  *Hyde v. Mangan*, 88 Cal. 319, 26 P. 180 (1891); *Johnson v. Razy*, 181 Cal. 342, 184 P. 657 (1919); *Bowman v. Sears*, 63 Cal. App. 235, 218 P. 489 (1923); *Treat v. Burns* 216 Cal. 216, 13 P. 2d 724 (1923); *In re Halabi*, 184 F.3d 1335 (11th Cir. 1999); *Kelley v. Upshaw* (1952) 29 Cal. 2d 179, 192 *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal. App. 2d 543, 553-554 ("A trust deed has no assignable interest independent of the debt; it may not be assigned or transferred apart from the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect."); *LaSalle Bank Nat'l Ass'n v. Lamy*, 2006 WL 2251721 at 2 ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.")

1  establish a pecuniary, legal, and equitable interest in the Property, and provide an

2  unbroken chain of title to Plaintiffs' Note and Mortgage.

3      90.    On information and belief, none of the Defendants were/are entitled to

4  enforce Plaintiffs' Note pursuant to § 3309 or subdivision (d) of § 3418 and none are

5  entitled to exercise the power of sale contained in the purported Deed of Trust.

6      91.    Plaintiffs do ***not*** allege that Fannie Mae, BAC or Recontrust must be in

7  "physical possession" or "hold" Plaintiffs' Note to foreclose on their home – a

8  requirement that has been rejected in California.[7]  Rather, Plaintiffs allege that, prior to

9  demanding mortgage payments from Mr. and Mrs. Castro and recording the NOD, none

10 of the Defendants or Doe Defendants had, nor presently have, a secured or unsecured

11 legal, equitable, or pecuniary interest in Plaintiffs' Note and/or Deed of Trust as required

-12 under California law – irrespective of who is actually in physical possession of Mr. and

13 Mrs. Castro's Note.

14     92.    Plaintiffs allege that, on information and belief, Fannie Mae, BAC,

15 Recontrust seek to enforce a debt obligation in which they have no pecuniary, equitable

16 or legal interest.  Fannie Mae, BAC and Recontrust's conduct is part of a fraudulent debt

17 collection scheme.

18     93.    Defendants Countrywide, Fannie Mae, BAC, and Recontrust do not have

19 any enforceable rights under Cal. Civ. Code § 2924, et seq. to enforce Plaintiffs' Deed

20 of Trust.

21     94.    By engaging in the aforementioned acts, Defendants violated Cal. Civ.

22 Code § 2924, et seq., 15 U.S.C. § 1641(g), and Cal. Bus. and Prof. Code § 17200.

**VII.   THE FAILURE TO ENJOIN THE ILLEGAL ENFORCEMENT OF THE**
23 **OBLIGATION AND FRAUDULENT FORECLOSURE SALE WILL**
**RESULT IN PLAINTIFFS SUFFERING SUBSTANTIAL AND**
24 **INCURABLE PREJUDICE**

25     95.    Because Fannie Mae was conveyed no interest in Plaintiffs' Mortgage and

26 experienced no monetary "default" whatsoever, Recontrust lacked the authority to

27

28

---

[7] *Chilton v. Federal Nat. Mortgage Assn.*, 2009 WL 5197869 (E.D. Cal.)

1   exercise the power to sell the Property, which it did by recording and serving the
2   purported NOD.

3       96.    The purported "Assignment" was created to mislead Mr. and Mrs. Castro
4   and the Court into believing that Fannie Mae, BAC and Recontrust had the authority to
5   demand payment, declare a default, and initiate foreclosure proceedings.

6       97.    Defendants' malicious intent was to create an appearance of propriety
7   around the foreclosure proceedings such that Plaintiffs would not question Fannie
8   Mae's right to collect payments or foreclose on the Property.  This misconduct was
9   malicious because it was taken with the specific intent of committing fraud on
10  Plaintiffs, and thus prejudice is likely to result causing harm to Plaintiffs, as detailed
11  herein.  The harm is not speculative, but rather imminent.

12      98.    Plaintiffs will be incurably prejudiced because they will lose their home to
13  an illegal foreclosure and will be evicted by parties who have no right to collect
14  payments, let alone foreclose on their home.

15      99.    Plaintiffs have been prejudiced because they have been unable to ascertain
16  the true and accurate amount, if any, needed to cure any purported default.  The
17  statutory right to cure an alleged default is a substantial statutory right that Plaintiffs
18  will be prejudiced from exercising if the foreclosure is not enjoined by the requested
19  relief.

20      100.   Plaintiffs will be prejudiced because, since the recording of a Trustee's
21  Deed Upon Sale is generally considered prima facie evidence of a properly conducted
22  sale, they will be precluded from proving otherwise.

23      101.   Plaintiffs will be prejudiced because, if the wrongful foreclosure is allowed
24  to proceed, they will be evicted from their home, and will be unable to defend
25  themselves since the completion of a non-judicial foreclosure sale carries a presumption
26  of propriety and title issues cannot be litigated in the unlawful detainer courts.

27      102.   Further, Plaintiffs will be prejudiced because they will not be allowed the
28  opportunity to avail themselves to the protections afforded a trustor under the statutory

1    provisions of Cal. Civ. Code §§ 2924 – 2924l, the Deed of Trust, and California

2    common law.

3        103.   Thus, Mr. and Mrs. Castro will suffer substantial and irreparable legal and

4    monetary prejudice if the Court does not determine the rights and obligations between

5    the parties, and enjoin the pending foreclosure sale.

6  ## VIII.  PLAINTIFFS HAVE SUFFERED, AND CONTINUE TO SUFFER,
7  ## SIGNIFICANT MONETARY, LEGAL, AND EQUITABLE DAMAGES

8        104.   The conduct of Fannie Mae, BAC and/or Recontrust, was malicious

9    because Defendants knew that they were not acting on behalf of the current pecuniary

10   beneficiary of the Note and Mortgage.  However, despite such knowledge, said

11   Defendants continued to demand and collect Plaintiffs' mortgage payments.

12       105.   Fannie Mae, BAC and/or Recontrust engaged and are engaging in a pattern

13   and practice of defrauding Plaintiffs, in that, on information and belief, during the entire

14   life of the mortgage loan, Fannie Mae, BAC and/or Recontrust failed to properly credit

15   payments made; incorrectly calculated interest on the accounts; and failed to accurately

16   debit fees.

17       106.   On information and belief, at all times material, Fannie Mae, BAC  and/or

18   Recontrust had and have actual knowledge that Plaintiffs' accounts were not accurate,

19   but that Plaintiffs would make further payments based on Defendants' inaccurate

20   accounts.

21       107.   On information and belief, Plaintiffs made payments based on the

22   improper, inaccurate, and fraudulent representations as to Plaintiffs' accounts.

23       108.   As a direct and proximate result of the actions of the Defendants set forth

24   above, Plaintiffs overpaid in interest.

25       109.   As a direct and proximate result of the actions of the Defendants set forth

26   above, Plaintiffs' credit and credit score have been severely damaged.  Specifically,

27   because of the derogatory credit reporting on their credit report by Fannie Mae, BAC

28

VERIFIED COMPLAINT                                                                    -22-

1   and Recontrust.  Mr. and Mrs. Castro are unable to refinance out their present loan and

2   save their property from a fraudulent foreclosure.

3       110.   As a direct and proximate result of the actions of the Defendants set forth

4   above, the title to Plaintiffs' home has been slandered, clouded, and its salability has

5   been rendered unmarketable.

6       111.   As a direct and proximate result of the actions of the Defendants set forth

7   above, Plaintiffs do not know who the current beneficiary of their Note and Mortgage

8   actually is, such that they are now subject to double financial jeopardy.

9       112.   As a direct and proximate result of the actions of the Defendants set forth

10  above, multiple parties can potentially claim an interest in the subject loan.

11      113.   The conduct of Fannie Mae, BAC and/or Recontrust and one or more of the

12  Doe Defendants have led to the imminent loss of Plaintiffs' home and to pecuniary

13  damages.  The pecuniary damages include, but are not limited to, the costs of removing

14  the cloud from their title and attorneys' fees, in an amount to be proven at trial.

15      114.   The conduct of Fannie Mae, BAC and/or Recontrust and one or more of the

16  Doe Defendants was malicious.  Said Defendants' conduct was malicious because

17  Defendants did not know the identity of the current and true beneficiary of Plaintiffs'

18  Note and Deed of Trust, yet still wrongfully recorded the documents so as to slander the

19  Plaintiffs' credit and title to the Property and make said title unmarketable.

20      115.   The title to Plaintiffs' Property has been rendered unmarketable and

21  unsalable because of the possibility of multiple claims being made against their

22  Property.  If the NOD, NOTS and "Assignment" are not cancelled, Plaintiffs will be

23  incurably prejudiced.  Plaintiffs will be denied the opportunity to identify their true and

24  current creditor/lender/beneficiary and exercise their statutory right to cure any alleged

25  default.

26      116.   Plaintiffs are ready, willing, and able to unconditionally tender their

27  obligation.

28

## FIRST CAUSE OF ACTION - DECLARATORY RELIEF

### [Against All Defendants and Doe Defendants]

117.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

118.   Plaintiffs allege that BAC and/or Fannie Mae do not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment has no value since the Deed of Trust is wholly unsecured.

119.   Defendants allege that Plaintiffs' Note and Deed of Trust cannot be determined to be unsecured and that they have an enforceable interest in the Plaintiffs' Note and Deed of Trust.

120.   Thus, the competing allegations made by Plaintiffs, above, establish that a real and present controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

121.   Accordingly, Plaintiffs request that the court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiffs' Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Plaintiffs' mortgage payments.

122.   As described above, Plaintiffs will be denied the opportunity to identify their true and current creditor/lender and exercise their right to cure any alleged default. They will be denied the right to conduct discovery and have BAC and Fannie Mae's claim verified by a custodian of records who has personal knowledge of the loan and all transactions related to it.  Plaintiffs will also be denied the opportunity to discover the true amount they still owe, if any amount still exists.

123.   It is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether Fannie Mae's claim against Plaintiffs are enforceable and whether it is secured or unsecured by any right, title, or interest in Plaintiffs' home.

124.    Furthermore, the conduct of Fannie Mae, BAC and/or Recontrust and one or more of the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION - FOR NEGLIGENCE

### [Against Fannie Mae, BAC and Doe Defendants]

125.    Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

126.    At all times relevant herein, Recontrust was acting as purported agents for Countrywide, Fannie Mae and BAC.  Defendants are jointly and severally liable for Countrywide, Fannie Mae, BAC and/or Recontrust's negligent and reckless conduct.

127.    At all times relevant herein Recontrust was acting as the trustee under the DOT.

128.    As the purported trustee of the DOT, Recontrust owes Plaintiffs a duty to exercise reasonable care and skill to follow California foreclosure laws.  These duties are statutorily prescribed by Cal. Civ. Code § 2924, et seq.

129.    As the purported trustee of the DOT, Recontrust owes Plaintiffs a duty to exercise reasonable care and skill as prescribed by the Deed of Trust.

130.    Recontrust is the common agent for Plaintiffs and the purported beneficiary of the Note and Mortgage.[8]

131.    Recontrust breached its duty of care owed to Plaintiffs when they failed to carry out foreclosure proceedings according to the strict requirements of Cal. Civ. Code § 2924 et seq.  Specifically, Recontrust breached their duty by fabricating documents, allowing their employees and/or their agents to robo-sign and attest to facts to which

---

[8] *Pro Value Properties, Inc. v. Quality Loan Service Corp.*, 170 Cal.App.4th 579 (2009).  The scope and nature of the trustee's duties in a non-judicial foreclosure, "are exclusively defined by the deed of trust and the governing statutes." *Id.* at 583..

1  they knew they had no personal knowledge, and misrepresenting to Plaintiffs that the

2  true and correct beneficiary was exercising the power of sale.  Not only can Recontrust

3  be found negligent for this egregious conduct, but this breach of the duty of care is

4  imputed to its principal(s), Fannie Mae, BAC, or whoever they may be.

5      132.   Fannie Mae and BAC, as purported current pecuniary beneficiaries of

6  Plaintiffs' Note and Mortgage, owe a duty of care to Plaintiffs to discharge its

7  contractual duties under the Deed of Trust with reasonable care.[9]  BAC and/or Fannie

8  Mae breached their duty of care to Plaintiffs when they aided and abetted Recontrust

9  and BAC when (1) it fabricated the Assignment of Deed of Trust, and (2) directed

10  Recontrust and/or BAC to declare a default and initiate foreclosure.[10]

11      133.   Fannie Mae and/or BAC are vicariously liable for the illegal, fraudulent

12  and negligent conduct of their purported agents, BAC and Recontrust.

13      134.   BAC as the purported mortgage servicer, has a duty of care to Plaintiffs to

14  exercise reasonable care to follow California law with regard to enforcement of

15  monetary obligations, and to refrain from taking or failing to take any action against

16  Plaintiffs that they did not have the legal authority to do.  This includes not collecting or

17  demanding mortgage payments when there is no right to enforce the obligation on

18  Defendants' behalf.

19      135.   As an actual and proximate cause of the reckless breach of duty of care,

20  utter carelessness, and blatant fraud of the Defendants as set forth above, Plaintiffs have

21  suffered (and continue to suffer) damages and harm.  Chain of title to Plaintiffs'

22  Property has been rendered unmarketable and fatally defective, and has caused Plaintiffs

23  to lose saleable title to the Subject Property.

24      136.   As an actual and proximate cause of the breach of duty of care and

25  carelessness of the Defendants as set forth above, Plaintiffs suffered, and continue to

26  suffer, general and special damages in an amount to be determined at trial, severe

[9] *Das v. Bank ofAmerica. N.A. (2010) 186 Cal. App. 4th 727,740*

[10] *Id.* (Citing to *Casey v. Deutsche, Nat. Assn.* (2005) 127 Cal.App. 4th 1138, 1144-45

1    emotional distress, including attorneys' fees and costs of bringing suit to challenge said

2    Defendants' right to enforce their debt obligation against them.

3                **THIRD CAUSE OF ACTION – VIOLATION OF 15 U.S.C. 1641(g)**

4                          **[Against BAC and Doe Defendants]**

5          137.   Plaintiffs hereby incorporate by reference each and every one of the

6    preceding paragraphs as if the same were fully set forth herein.

7          138.   Plaintiffs reside in the Subject Property and it is their principal residence.

8          139.   The new subsection (g) added to Section 131 of TILA by Section 404 of

9    **The Helping Families Save Their Homes Act of 2009** states:

11         (g) NOTICE OF NEW CREDITOR-
            (1)   IN GENERAL. –In addition to other disclosures required by
12                this title, not later than 30 days after the date on which a
                  mortgage loan is sold or otherwise transferred or assigned to a
13                third party, the creditor that is the new owner or assignee of
                  the debt shall notify the borrower in writing of such transfer,
14                including-

15                (A) the identity, address, telephone number of the new
16                creditor;

17                (B) the date of transfer;

18                (C) how to reach an agent or party having authority to act on
19                behalf of the new creditor;

20                (D) the location of the place where transfer of ownership of
                  the debt is recorded; and
21
22                (E) any other relevant information regarding the new creditor."

23         Failure to comply with the requirements of this new subsection 131(g) of
           TILA may result in civil liability for actual damages, legal fees and
24         statutory damages under Section 130(a) of TILA.

25         140.   Irrespective of who effected the recordation of the "Assignment" recorded

26   on November 4, 2010, the purported transfer of ownership of Plaintiffs' Note occurred

27   after May 2009.

141.   Plaintiffs allege that Section 131(g) of TILA applies to BAC as it was purportedly the assignee of Plaintiffs' loan.

142.   Plaintiffs allege that Section 131(g) of TILA applies to BAC as it was purportedly assigned Plaintiffs' loan on or about October 29, 2010.

143.   Section 131(g) of TILA requires BAC to perform and comply with the requirements of the statute, otherwise face statutory and civil penalties and damages.

144.   Defendant BAC alleges in its pleadings that is the purported owner of Plaintiffs' debt.  Plaintiffs dispute the validity of BAC's claim, for the reasons stated herein.

145.   BAC did not provide Plaintiffs with written notice within 30 days after the date on which it was allegedly assigned the mortgage.

146.   Mr. and Mrs. Castro did not receive notice indicating the exact date of the purported assignment of the interest in their Note, as required by Section 131(g)(1)(B).

147.   Mr. and Mrs. Castro did not receive notice indicating how to reach an agent or party having authority to act on BAC's behalf, as required by Section 131(g)(1)(C).

148.   Plaintiffs did not receive notice indicating the location of the place where transfer of ownership of the debt is recorded, as required by Section 131(g)(1)(D).

149.   Mr. and Mrs. Castro did not receive notice indicating any other relevant information regarding the new creditor, purportedly BAC, as required by Section 131(g)(1)(E).

150.   Thus, BAC violated section 131(g) 15 U.S.C. 1641 and is subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages. *See* §131 (g) 15 U.S.C. 1640.

151.   As a result of BAC's violation, Plaintiffs' home has fallen into foreclosure and they have suffered actual monetary damages in that they are in the process of being

foreclosed upon.  Further, Mr. and Mrs. Castro have had to pay attorneys' fees and filing fees and costs, both in amounts to proven at trial.  Mr. and Mrs. Castro have also suffered harm to their credit and have been unable to address it because they has not been notified of their creditor, and has not been given the opportunity to cure their purported default.  This harm is a direct and proximate result of Defendant's violation of 15 U.S.C. 1641(g).

152.  Plaintiffs are entitled to a private right of action to enforce Section 131(g) U.S.C. 1641, et seq.

## FOURTH CAUSE OF ACTION - VIOLATION OF
## BUS. & PROF. CODE § 17200, ET SEQ.
### [Against Fannie Mae, BAC and Doe Defendants]

153.  Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

154.  Defendants' conduct, for the reasons stated herein, is in direct violation of California Civil Code sections 2924, et seq.

155.  Defendants' conduct, for the reasons stated herein, is in direct violation of California Civil Code sections 2924f(c)(2) and 2932.5.

156.  Cal. Bus & Prof. Code § 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.  As more fully described above, Defendants' acts and practices are unlawful, fraudulent, and likely to deceive.  This conduct is ongoing and continues to this date.

157.  Specifically, as fully set forth above, Defendants engage in unlawful, fraudulent, and deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by, among other things:

    (a)    Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

    (b)    Fabricating, executing and recording false and misleading documents;

    (c)    Fabricating, executing and recording documents without the legal authority to do so;

    (d)    Failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code § 1095;

    (e)    Failing to record Powers of Attorney in connection with other recorded documents in violation of Cal. Civ. Code § 2933;

    (f)    Violating the Security First Rule;

    (g)    Demanding and accepting payments for debts that were non-existent;

    (h)    Acting as beneficiaries and trustees without the legal authority to do so;

    (i)    Misrepresenting the foreclosure status of properties to borrowers; and

    (j)    Other deceptive business practices.

158.   Plaintiffs allege that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws, including 131(g), and regulations and said predicate acts are therefore per se violations of Cal. Bus. & Prof. Code § 17200, et seq.

159.   Plaintiffs allege that Defendants' misconduct, as alleged herein, gave, and have given, Defendants an unfair competitive advantage over their competitors.  The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

160.   The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiffs.

161.   By reason of the foregoing, Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiffs and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

1   Additionally, Plaintiffs are therefore entitled to injunctive relief and attorneys' fees as

2   available under Cal. Bus & Prof. Code § 17200 and related sections.

3        162.   As a direct and proximate result of the actions of Defendants, and each of

4   them, stated above, Plaintiffs have been injured in that a cloud has been placed upon

5   title to Plaintiffs' Property and Defendants, have failed to remove this cloud from

6   Plaintiffs' title.

7        163.   Plaintiffs are entitled to an order compelling Fannie Mae, BAC and any

8   other defendants claiming an interest in and to the Property to take any and all actions

9   necessary to remove the cloud they have placed upon their title and an order enjoining

10  such Defendants from taking such actions again in the future.

11              **FIFTH CAUSE OF ACTION - QUIET TITLE**

12  **[As Against Countrywide, Fannie Mae, BAC and Doe Defendants claiming any**

13              **interest in the Subject Property]**

14       164.   Plaintiffs hereby incorporate by reference each and every one of the

15  preceding paragraphs as if the same were fully set forth herein.

16       165.   Plaintiffs have offered to tender their obligation and are ready, willing, and

17  able to tender their obligation.

18       166.   Plaintiffs allege that they are the owner of the Subject Property per the

19  Deed of Trust executed by Plaintiffs.

20       167.   The basis for Plaintiffs' interest in title lies in the Deed of Trust from

21  Defendant Countrywide, which grants the Subject Property to Plaintiffs, and which is

22  recorded in the Official Records of the County of Los Angeles.

23       168.   Plaintiffs are seeking to quiet title against the claims of Defendants as

24  follows: some of the named Defendants are seeking to hold themselves out as the

25  owners of legal title to the Subject Property, when in fact Plaintiffs have an interest in

26  such properties held by Defendants, when Defendants have no right, title, interest, or

27  estate in the Subject Property, and Plaintiffs' interest is adverse to Defendants' claim to

28  ownership.

169.   Plaintiffs seek to quiet title as of July 25, 2011.

170.   Plaintiffs therefore seeks judicial declaration that the title to the Subject Property is vested in Plaintiffs alone and that Defendants herein, and each of them, be declared to have no estate, right, title, or interest in the Subject Property and that said defendants, and each of them, be forever enjoined from asserting any estate, right, title, or interest in the Subject Property, adverse to Plaintiffs' herein.

WHEREFORE, Plaintiffs prays as follows:

1.   For compensatory, special, and general damages in an amount according to proof at trial, but not less than $1,000,000.00, against all Defendants;

2.   For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3.   For an order deeming Plaintiffs' Promissory Note as unsecured;

4.   For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiffs' title to the Property, including the purported Notice of Default, Notice of Trustee's Sale and Assignment of Deed of Trust;

5.   For an order finding that Defendants have no legally cognizable rights as to Plaintiffs, the Property, Plaintiffs' Promissory Note, Plaintiffs' Deed of Trust, or any other matter based on contract or any of the documents prepared by Defendants, tendered to and executed by Plaintiffs;

6.   The Court issue an order restraining Defendants, their agents or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency in this matter;

7.   For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiffs and returning the same to Plaintiffs with interest thereon at the statutory rate from the date the funds were first received from Plaintiffs;

8.   For an order quieting title in favor of Plaintiffs;

9.   For costs of suit incurred herein;

1        10.    For reasonable attorneys' fees incurred;

2        11.    For such other and further relief as the court may deem proper.

3

4    Dated:    July 25, 2011             PROSPER LAW CORPORATION

5

6    By:   _____

7                  Gordon F. Dickson

8                  Deborah P. Gutierrez
                   Tanmay P. Mistry

9                  Attorneys for Plaintiffs,
                   Robert and Lynn Castro

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT                        -33-

1

## **VERIFICATION**

2      I, Robert Castro, am the Plaintiffs in the above-entitled action.  I have read the

3 above Verified Complaint, and I have personal knowledge of the matters stated herein

4 except as to those matters stated upon information or belief and, as to those matters, I

5 believe them to be true.

6      I declare under penalty of perjury under the laws of the State of California, that

7 the foregoing is true and correct as executed this 25 Day of July 2011, in the City of

8 Santa Clarita, County of Los Angeles.

9

10                                           By: _____

11                                               Robert Castro

12

13

14

15      I, Lynn Castro, am the Plaintiffs in the above-entitled action.  I have read the

16 above Verified Complaint, and I have personal knowledge of the matters stated herein

17 except as to those matters stated upon information or belief and, as to those matters, I

18 believe them to be true.

19      I declare under penalty of perjury under the laws of the State of California, that

20 the foregoing is true and correct as executed this 25 Day of July 2011, in the City of

21 Santa Clarita, County of Los Angeles.

22

23                                           By: _____

24                                               Lynn Castro

25

26

27

28

VERIFIED COMPLAINT                                                        -34-

1

## DEMAND FOR JURY TRIAL

2    Plaintiffs Robert and Lynn Castro hereby demand a trial by jury on all claims.

3

4    Dated:        July 25, 2011                    PROSPER LAW CORPORATION

5

6                                        By:

7                                              Gordon F. Dickson
                                               Deborah P. Gutierrez
8                                              Tanmay P. Mistry
                                               Attorneys for Plaintiffs,
9                                              Robert and Lynn Castro

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT                                                              -35-

# EXHIBIT A



CLICK HERE TO ORDER DEMO   RID 2000   CLICK HERE TO REGISTER   RID 2000



**DOCX Home**
**About DOCX**
**What's Up @ DOCX**
**Contact DOCX**

| Online Services | Downloads | Services | Products |

 *GETNET™ DOCUMENT RECOVERY*

DOCX's GetNet™ Document Recovery solution is a national network of runners that is engaged to provide document recovery, expedited recordation services, title searches, and insurance submissions.

The service is unique in that our clients can request that DOCX obtain any missing recordable documents through this web site through our online GetNet™ Work Order Form.  Status of existing projects can also be obtained through our Online Services. We also accept work orders the "old fashioned" way via fax or mail. Upon receipt of the work order, DOCX will access the national network of runners, place the order and follow up to ensure prompt delivery.

GetNet™ was designed to assist mortgage servicers in meeting agency certifications and to avoid costly penalties for filing late satisfaction pieces.

## GetNet™ Features

- A National Network of title runners retains presence in every county jurisdiction nationwide.
- Obtains missing mortgage documents, assignments, title policies and LGC/MICs.
- Expedites recordation by physically walking documents in to county recorder offices.
- Provides title searches to identify mortgage holders.
- Provides online reporting capabilities.

## GETNET™ RATE SHEET

| XCODE | SERVICE | AMOUNT |
|-------|---------|--------|
| INF1 | Obtain PIN Number from Online Public Records | $5.50 + SH |
| INF2 | Obtain from Online Public Records Lot Block or Section | $5.50 + SH |
| INF3 | Obtain Property Address | $5.50 + SH |
| INF4 | Obtain Recorded Mortgage, Book, Page or Instrument Number | $12.95 + TPC |
| INF5 | Obtain Vehicle Identification Number | $12.95 + SH |
| CT01 | Cursory Title Search to Identify Mortgagee of Record | $15.95 + TPC |
| TS01 | Perform Complete Title Search | $15.95 + TPC |
| SI01 | Obtain Copy of Mortgage | $12.95 + TPC |
| SI02 | Cure Defective Mortgage | $12.95 + TPC |
| SI03 | Retrieve Certified Copies of Mortgages | $12.95 + TPC |
| PA01 | Obtain Copy of Power of Attorney or Name Certification | $12.95 + TPC |
| PA02 | Record Power of Attorney | $12.95 + TPC |

| PA03 | Obtain Clerk Certified Copy of Power of Attorney | $12.95 + TPC |
|------|--------------------------------------------------|--------------|
| IC01 | Obtain Copy of Installment Contract from VA | $15.95 + SH |
| SA01 | Obtain Copy of Subordination Agreement | $15.95 + TPC |
| MA02 | Obtain Copy of Modification | $15.95 + TPC |
| MI01 | Obtain Copy of MIC | $12.95 + SH |
| MI02 | Correct MIC | $12.95 + SH |
| LG01 | Obtain Copy of LGC | $12.95 + SH |
| LG02 | Correct LGC | $12.95 + SH |
| TP01 | Obtain Copy of Title Policy Within 7 years (based on calender year) | $19.95 + TPC |
| TP02 | Correct Existing Title Policy | $19.95 + TPC |
| TP03 | Obtain Copy of Title Policy over 7 years (based on calendar year) | $29.95 + TPC |
| TP04 | Obtain Quotes to Write and Order New Lenders Title Policy | $29.95 + TPC |
| TP05 | Obtain Abstract from Title Company (State of Iowa) | $15.95 + TPC |
| TE02 | Correct Title Policy Endorsement | $15.95 + TPC |
| LN02 | Create Lost Note Affidavit | $12.95 + SH |
| NA01 | Create Note Allonge | $12.95 + SH |
| NC01 | Name Affidavit | $12.95 + SH |
| IA01 | Obtain Copy of Assignment | $15.95 + TPC |
| IA02 | Retrieve Certified Copies of Assignments | $15.95 + TPC |
| IA03 | Create Missing Intervening Assignment | $35.00 + TPC |
| IA04 | Record Prepared Assignments | $12.95 + TPC |
| IA05 | Cure Defective Assignment | $12.95 + TPC |
| IS01 | FHA and VA Mortgage Insurance Submission | $95.00 + TPC |
| UC01 | Retrieving a UCC Package | $15.95 + TPC |
| CF01 | Recreate Entire Collateral File | $95.00 + TPC |
| ER01 | Expedited Recordation: Hand Carry Recordable Documents | $25.00 + TPC |

**Contact DOCX for volume discounts on orders of 200 items or more.**

**TPC =** Third Party Costs include Title Runner, County Jurisdictional, courier and postage costs.

**SH =** Shipping costs.

*The DOCX Service Fee will be invoiced upon receipt of the work order.*

*TPC and SH costs will be billed upon completion of the work order.*
*You can also place orders online at www.docx.com.*

## Getting Started

To get started using the DOCX GetNet Service:

- Complete the **DOCX GetNet™** Service Agreement and obtain a Client ID.  **CALL DOCX   Marketing at: 888/DOCX–NET 888/362-9638 or email <u>sales@docx.com</u>** for an Agreement and Client ID.
- Once you complete the agreement and obtain a Client ID you can submit **GetNet™ Work Order Forms**. Clients can send work orders via the internet, email, fax, or mail.  **CALL DOCX   Marketing at: 888/DOCX-NET 888/362-9638 or email <u>sales@docx.com</u>**  for a Work Order form, *or* how to submit **GetNet™ Work Order Forms** online.
- Contact **DOCX Support at 800/723-0215 Ext 3014 or email <u>support@docx.com</u>** for requirements and procedures of email and online **GetNet™ Work Order Form**.

# EXHIBIT B

**Tina Sevillano**
Trustee Sales at Recon Trust Co
Greater Los Angeles Area · Real Estate

| Current | • **Trustee Sales at Recon Trust Co** |
|---|---|
| Connections | 1 connection |

## Tina Sevillano's Experience

**Trustee Sales**
**Recon Trust Co**
Legal Services Industry
Currently holds this position

## Tina Sevillano's Contact Settings

**Interested In**

- career opportunities
- new ventures
- expertise requests
- reference requests

- consulting offers
- job inquiries
- business deals
- getting back in touch

## View Tina Sevillano's full profile to...

- See who you and **Tina Sevillano** know in common
- Get introduced to **Tina Sevillano**
- Contact **Tina Sevillano** directly



# EXHIBIT C



# PROSPER LAW

PROSPER LAW CORPORATION
5301 BEETHOVEN STREET
SUITE 109
LOS ANGELES, CALIFORNIA 90066

TELEPHONE: (800) 808-9798
FAX: (800) 808-0428
WEBSITE: www.prosperlawcorp.com

GORDON F. DICKSON
DEBORAH P. GUTIERREZ

OF COUNSEL:
RICHARD M. GEE ♦
KEITH R. OLIVER
CARLOS A. LLARENA
MICHAEL KIM

♦ MEMBER CA & CO BARS

DIRECTOR OF FIRM OPERATIONS:
ROBYN NAKAGAWA

SAN FRANCISCO OFFICE
────
450 HARRISON STREET, SUITE 310
SAN FRANCISCO, CALIFORNIA 94105

SAN DIEGO OFFICE
────
701 B STREET, SUITE 234
SAN DIEGO, CALIFORNIA 92101

SENDER'S E-MAIL:
gfdickson@prosperlawcorp.com
Telephone (310) 893-6207

July 11, 2011

**Via US Certified Mail # 7010 3090 0000 5145 6535**

Bank of America
555 California Street, 8th FL
San Francisco, CA 94104

Re:  **QUALIFIED WRITTEN REQUEST**
     **Loan Number:** 133852195
     **Our Client:** Robert Castro
     **Property Address:** 27729 Sycamore Creek Drive Valencia, CA 91354

**This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).**

To Whom It May Concern:

Please be advised this office has been retained by Robert Castro ("Mr. Castro") in regards to the accounting and servicing of this loan and the need for understanding and clarification of various sales, transfers, funding sources, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date. The subject property is located at 27729 Sycamore Creek Drive Valencia, CA 91354.

This letter concerns sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive, and fraudulent accounting tricks and practices that may have also negatively affected any credit rating, mortgage account and/or the debt or payments that my clients may be legally obligated to.

Please provide the following information:

1. A complete life of loan transactional history;

2. The Transaction Codes for the software platform of the Servicer;

3. The Code definitions in plain English;

4. The Key Loan Transaction history, bankruptcy work sheet (if any), or any summary of all of the accounts in an XL spreadsheet format;

5. The MERS Milestone Reports and the Edgar website address for the Pooling and Servicing Agreement, Prospectus and Prospectus Supplement;

6. The name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note;

7. Copies of all collection notes and communications files;

8. An itemized statement of the amount needed to fully reinstate the loan;

9. All communications with any non-lawyer third-party providers; and

10. All Form P-309 screen shots of all system accounts (principal, interest, escrow, late charges, legal fees, property inspection fees, property preservation fees, broker price opinion fees, statutory expense fees, miscellaneous fees, corporate advance fees, trustee suspense accounts, debtor suspense accounts) associated with the loan.

Under RESPA, this information must be provided and cannot be claimed as "confidential," "proprietary," or otherwise private.  Failure to disclose the requested information will be considered failure to comply with this Qualified Written Request and thus a violation of 15 U.S.C. section 1601.

I also hereby demand that a chain of transfer from Bank of America to wherever the security currently is be promptly sent to my office.  Absent the actual evidence of the security, Mr. Castro has no choice but to dispute the validity of Bank of America's lawful ownership, funding, entitlement right, and the current debt Bank of America claims Mr. Castro owes.  By debt I am referring to the principal balance Bank of America claims Mr. Castro owes; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by Bank of America or any trust or entity Bank of America may service or sub-service for.

To independently validate this debt, my office needs to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date.  Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until responses are provided to each of the requests.

I also request that Bank of America conduct Bank of America's own investigation and audit of this account since its inception to validate the debt Bank of America currently claims Mr. Castro owes. I would like Bank of America to validate the debt so that it is accurate.

Please be aware that potential abuses by Bank of America or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

- Increased the amounts of monthly payments;
- Increased the principal balance Mr. Castro owes;
- Increased the escrow payments;
- Increased the amounts applied and attributed toward interest on this account;

Page 3 of 4

- Decreased the proper amounts applied and attributed toward the principal on this account; and/or;
- Assessed, charged and/or collected fees, expenses and miscellaneous charges Mr. Castro is not legally obligated to pay under this mortgage, note and/or deed of trust.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601.  RESPA provides substantial penalties and fines for non-compliance or failure to answer the questions provided in this letter within sixty (60) days of its receipt.

Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

**Default Provisions under this QUALIFIED WRITTEN REQUEST**

Bank of America or any agents, transfers, or assigns' omissions of, or agreement by silence to this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to, including but not limited by, any violations of law and/or immediate termination and/or removal of any and all right, title and interest (liens) in Mr. Castro's, or any property or collateral, connected to Mr. Castro's or loan number 133852195, and waives any and all immunities and/or defenses to claims and/or violations agreed to in this RESPA REQUEST, including but not limited to:

1. Mr. Castro's right to, by Bank of America's breach of fiduciary responsibility, fraud, and/or misrepresentation, revoke and rescind any and all power of attorney or appointment Bank of America may have or may have had in connection with loan number 133852195, and any property and/or real estate connected with loan number 133852195;

2. Mr. Castro's right to have any certificated or uncertificated security re-registered in Mr. Castro's, and only Mr. Castro's name;

3. Mr. Castro's right of collection via Bank of America's liability insurance and/or bond;

4. Mr. Castro's entitlement in filing and executing any instruments, as power of attorney for and by Bank of America ,including but not limited to a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where Bank of America is located;

5. Bank of America's right to damages because of Bank of America's wrongful registration and breach of intermediary responsibility with regard to Mr. Castro's asset, by way of Bank of America issuing to Mr. Castro a certified check for the original value of Mr. Castro's monetary instrument;

6. Mr. Castro's right to have loan number 133852195 completely set off because of Bank of America's wrongful registration and breach of intermediary responsibility with regard to Mr. Castro's monetary instrument/asset by Bank of America's sending confirmation of set off of wrongful liability of Mr.

Page **4** of **4**

Castro and issuing a certified check for the difference between the original value of Mr. Castro's monetary instrument/asset and what Mr. Castro mistakenly sent to Bank of America as a payment for such wrongful liability.

Bank of America or any of Bank of America's transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws - signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury, while offering direct testimony with the official capacity as appointed agent for Bank of America in accordance with Bank of America's Articles of Incorporation, by-laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association.

Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days.  When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as Bank of America's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: When Bank of America fails by not rebutting to any part of this RESPA REQUEST, Bank of America agrees with the granting unto Mr. Castro unlimited Power of Attorney and any and all full authorization in signing and endorsing Bank of America's name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement.  Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement.  Consent and agreement with this Power of Attorney by Bank of America waives any and all claims and/or defenses of Bank of America, and remains in effect until the satisfaction of all obligations by Bank of America have been satisfied.

If you have any questions, please do not hesitate to contact my office.

Sincerely,

Gordon F. Dickson, Esq.
*Managing Attorney*